**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| L.J. FOSTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 5:05-CV-0091-J |
| § | |
| The UNITED STATES MARSHALS § | |
| SERVICES, an agency of the United States § | |
| of America and the UNITED STATES § | |
| DEPARTMENT OF JUSTICE, an agency § | |
| of the United States of America, both by § | |
| and through the Honorable Roberto § | |
| Gonzales, Attorney General; and THE § | |
| UNITED STATES OF AMERICA, § | |
| § | |
| Defendants. § | |
| § | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff was terminated from his employment as a Court Security Officer ("CSO") after a

physician diagnosed his hearing loss and suggested to the United States Marshals Service ("USMS")

that Plaintiff could no longer fulfill the essential functions of his job. Plaintiff sued the United States

Marshals Service, the United States Department of Justice, and the United States of America,

challenging both the methodology used by the examining physician and the decision to terminate

his employment. He brought claims here under the Rehabilitation Act, the Age Discrimination in

Employment Act ("ADEA"), the Americans With Disabilities Act ("ADA") the Back Pay Act, and

for violations of his due process rights under the Fifth Amendment to the United States Constitution.

He supplemented his federal claims with claims in contract and tort.

In this *Motion for Summary Judgment*, the Defendants allege that each of the claims asserted by Plaintiff are barred here because they were addressed in a previous case, *Strolburg v. AKAL Security, Inc.*, No. CV 03-0004-S-DOC (D. Idaho 2005).

## FACTS

Plaintiff L.J. Foster ("Foster"), was employed by AKAL Security, Inc. ("AKAL"), a company that provided security services for the federal courts of the Northern District of Texas under a contract with the USMS.  Until May of 2002, Foster worked at the federal courthouse in Lubbock, Texas, as a CSO.

On August 9, 2001, Foster underwent functional hearing testing at the Hearing and Speech Center at UMC, where he was evaluated by  Dr. J.V. Barson, DO, MBH.  Dr. Barson determined that Foster had significant hearing loss which prevented him from meeting the physical requirements for medical certification of law enforcement officers.   He further determined that, although Foster tested at acceptable levels with the addition of a hearing aid, this accommodation would be unacceptable for meeting the requirements of law enforcement officials because hearing aids could not  "restore normal hearing."  Dr. Barson determined that Foster posed a significant risk to the health and safety of other law enforcement officers and the public, and recommended to the USMS that Foster be medically disqualified from his position.

After receiving Dr. Barson's recommendation, the USMS notified AKAL that Foster could not meet the requirements of a CSO according to the terms of the contract between USMS and AKAL.  AKAL subsequently removed Foster from his position as a CSO in May of 2002.

Foster then challenged his termination in two separate lawsuits.  First, On January 21,

2003, Foster joined an action in the United States District Court for the District of Idaho

involving several other  CSOs in *Strolburg v. AKAL Security, Inc.*, No.CV 03-0004-S-DOC (D.

Idaho 2005), which included claims under the Rehabilitation Act, ADEA, ADA, the Back Pay

Act, state civil rights statutes, and for violations of his due process rights under the Fifth

Amendment to the United States Constitution.  The *Strolburg* Plaintiffs also brought  a tort claim

styled  "concert of action" under the Federal Tort Claims Act ("FTCA") and a breach of contract

claim.   All of the claims in that action were dismissed as a result of three different orders by

Judge David Carter.

Then, on April 26, 2005, Foster brought a separate, individual action in this Court,

alleging virtually the same claims.


### Contentions

Defendants contend that all of Foster's claims are barred by preclusion theories, and thus

should be resolved by summary judgment.  They contend that Judge Carter disposed of Foster's

ADEA, Rehabilitation Act, contract and due process claims through orders that serve as final

judgments, and thus cannot be considered by this Court under the doctrine of res judicata.  In

addition, Defendants contend that Foster's claims under the Back Pay Act, FTCA and the

Rehabilitation Act are barred because Judge Carter decided jurisdictional issues which are

binding on this Court under the doctrine of collateral estoppel.

Plaintiff concedes in his *Response to USMS Motion for Summary Judgment* that his

ADA, ADEA, FTCA and contract claims can all be dismissed with prejudice.  As such,  these

claims are DISMISSED WITH PREJUDICE.

However, he asserts that his Rehabilitation Act and due process claims are not barred by res judicata or collateral estoppel, and can thus be heard by this Court.  In addition, he asserts that his Back Pay Act claim should be dismissed without prejudice so that he may pursue it in the Federal Claims Court.

## Analysis

### *Legal Standard*

A case should be dismissed on summary judgment where "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."  *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987); *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  On summary judgment, the Court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" to determine whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, the Court must view all of the evidence in the light most favorable to the party opposing the motion for summary judgment. *Hibernia National Bank v. Carner*, 997 F.2d 94 (5th Cir. 1993)*; Reid v. State Farm Mutual Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  As it is possible to discern the claims and arguments of the parties through the papers and court orders from the *Strolburg* action as well as the pleadings and affidavits filed with the present motion, and there appears no substantial dispute as to the applicable facts required to resolve the motion, summary judgment is proper in this instance.

*Res Judicata*

Res judicata, or claim preclusion, is a judicially-created doctrine that protects the finality of resolutions between parties, and encourages parties to raise all of their claims arising out of a particular incident at one time, to preserve both judicial and private resources. *See Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917) (claim preclusion is a "rule of fundamental repose important for both litigants and for society"); *Opelousas-St. Landry Securities Co. v. United States*, 66 F.2d 41, 44 (5 th Cir. 1933) (It is a "principle of peace"). To promote these ends, claim preclusion acts in two ways. First, to bar claims that were brought in a previous lawsuit. *See Nilsen v. City of Moss Point, Mississippi*, 701 F.2d 556, 560 (5th Cir. 1983). Second, to bar claims that should have been brought in the first litigation, even if they were not ever before considered, if those claims arose out of the same transaction or set of transactions that was the subject of the first action. *Id.* at 560; *see also* Allen v. McCurry, 449 U.S. 90, 94 (1980). For a prior judgment to bar an action on the basis of res judicata, four factors must be met:

(1) the parties must be identical in both suits;

(2) the prior judgment must have been rendered by a court of competent jurisdiction;

(3) there must have been a final judgment on the merits; and

(4) the same cause of action must have been involved in both suits.

*See id.* at 559.

Except possibly with regard to the due process claim, it is only the third element, whether there was a final judgment on the merits, that is at issue here.

*Collateral Estoppel*

Collateral estoppel, or issue preclusion, is another judicially-created principle which seeks to give finality to the judgment in a previous lawsuit.  Under this doctrine, "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties . . . ." *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).  The doctrine of collateral estoppel is " both narrower and broader than res judicata." *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999).  Broader in that its effect reaches beyond the resolution of claims and encompasses even individual issues integral to the resolution of those claims.  Narrower in that its sweep would not foreclose inquiry into issues or arguments unless they were actually raised in a previous action.  In the Fifth Circuit, collateral estoppel only prevents a party from litigating an issue already raised in an earlier action between the same parties if:

> (1) the issue at stake is identical to the one involved in the earlier action;
>
> (2) the issue was actually litigated in the prior action; and
>
> (3) the determination of the issue in the prior action was a necessary part of the judgment in that action."

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5 th Cir. 2004).

## Foster's Claims

*Rehabilitation Act Claim*

The *Strolburg* plaintiffs alleged that they were wrongfully terminated in violation of the

Rehabilitation Act of 1953, 29 U.S.C. § 701 (2005).  They raised claims under Section 501 of the

Act (prohibiting discrimination by the federal government) as well as claims under Sections 503

and 504 (prohibiting discrimination by subcontractors of the federal government and those

receiving federal funds).  They alleged that they were all physically and medically qualified for

employment as CSOs.  They alleged that if reasonable, appropriate medical qualifications had

been applied, and reasonable accommodations had been permitted to those with actual

disabilities, that they could each safely and fully perform the qualifications of their jobs.

Therefore, they alleged that their terminations and medical disqualifications were discriminatory

on the basis of their perceived disability, and therefore a violation of the Act. *Id.* at 14-15.

The *Strolburg* Plaintiffs first sought to raise their Rehabilitation Act claims in their First

Amended Complaint.  *See Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss* at

12 ("**August 11, 2003 Order**" at 12).  Judge Carter initially permitted amendment to allow for a

Section 501 claim in his August 11, 2003 order, because he felt it possible that the Plaintiffs

could demonstrate they were employees of the federal government, rather than employees of

independent contractors, under the Ninth Circuit's "hybrid common law test." *See* **August 11,**

**2003 Order** at 13 (citing *Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir. 1980).  In

Judge Carter's January 19, 2005 Order Granting Summary Judgment, he dismissed Foster's

claim for failure to exhaust administrative remedies.  *See* **January 19, 2003 Order** at 14-16.

Judge Carter noted that before Foster could maintain an action in federal court, he was required

to avail himself of Title VII's administrative remedy. *See id*. at 14 (citing *Vinieratos v. United*

*States*, 939 F.2d 762, 773 (9th Cir. 1991); *Boyd v. United States Postal Services*, 752 F.2d 410,

413-414 (9th Cir. 1985)).  He further noted the specifics of filing an administrative claim: that it

must be initiated by contacting an Equal Employment Opportunity Commission ("EEOC")

Counselor within forty-five days of the allegedly unlawful employment action. *See id.*; 29

C.F.R. § 1614.105; *see also* 42 U.S.C. § 2000e-16(e).

Foster and other plaintiffs had not even initiated the administrative hearing process with

the EEOC when they were joined to the lawsuit in January of 2003. *See id.* Foster himself filed

his administrative claim on October 13, 2004. This was well more than 45 days after his

termination in May of 2002.

Even though the deadline for filing the claim had passed before Foster initiated the

administrative process, and even though he found that equitable tolling of the administrative

deadline was not applicable, Judge Carter did not dismiss Foster's claim with prejudice. Rather,

he found that under 29 C.F.R. 1614.105(a)(2), the USMS had the discretion to extend the time to

permit the filing of an administrative claim. *See* **January 19, 2003 Order** at 14-16. Therefore,

he found a slim window of opportunity to maintain a claim in federal court, if Foster could

obtain the permission of the USMS to file their administrative claim late. Consequently, he

dismissed the Rehabilitation Act claim, but made clear that the dismissal was without prejudice

as simply premature. *Id.*

In the present claim, Foster brought a Rehabilitation Act claim as his second cause of

action. While AKAL is not included, and only federal defendants are pursued here, in all other

respects Foster's Rehabilitation Act claim in this Court is identical to that raised in the *Strolburg*

action.

Defendants contend that res judicata is applicable here because they claim dismissal on

the basis of a failure to exhaust Title VII administrative process is a preclusive adjudication on

the merits.  The determination of whether Foster's claim should be precluded depends upon the

nature of the actual reason for dismissal in the *Strolburg* action.

Foster has brought his claim against federal entities under 42 U.S.C. § 2000e-16. As an

exception to the government's immunity from suit, this statute should be narrowly construed.

*United States v. Testan*, 424 U.S. 392, 399 (1976); *McCarty v. United States*, 929 F.2d 1085,

1087 (5th Cir. 1991).  Because of this narrow construction, the Fifth Circuit has repeatedly held

that for federal employees, compliance with the administrative exhaustion requirements of 42

U.S.C. § 2000e-16 is a jurisdictional requisite.  *Munoz v. Aldridge*, 894 F.2d 1489, 1494 (5th Cir.

1990) (noting the impact of sovereign immunity on section 2000e-16 cases); *Hoffman v. Boeing*,

596 F.3d 683, 684 (5th Cir. 1979) (a federal employee can "enter federal court only after passing

through the administrative foyer"); *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir.

1990) (noting that failure to exhaust administrative remedies deprives a district court of

jurisdiction).  Therefore a dismissal for failure to exhaust administrative remedies is a finding by

a court that the court lacked subject matter jurisdiction.  *See Linthecome v. Snow*, No. Civ.3:03-

CV-2103-H, 2004 WL 51321  (N.D. Tex. Jan. 5 2004) (citing *Randel v. U.S. Dept. Of Navy*, 157

F.3d 392, 395 (5th Cir, 1998); *Barnes v. Levett*, 118 F.3d 404, 408 (5th Cir. 1997)).

However, the timing for filing an administrative complaint is an entirely different matter.

The Fifth Circuit makes clear that while administrative exhaustion requirements are

jurisdictional requisites for federal employees, the time limits for bringing  such administrative

claims are not jurisdictional, but are more akin to statutes of limitations.  *Oaxaca v. Roscoe*, 641

F.2d 386, 388 (5th Cir. 1991).

The distinction between jurisdictional requisite and a statute of limitation is critical,

because, contrary to the position of the Defendants, dismissal for want of subject matter jurisdiction is not a final adjudication on the merits as required for the doctrine of claim preclusion to act as a bar. *Linthecome*, 2004 WL 51321 at *1 (citing *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 142 F.3d 1006, 1013 (5th Cir. 1998). As the Fifth Circuit noted in *Nilsen v. City of Moss Point Mississippi*, a decision cited by Defendants, "More, dismissals for want of jurisdiction are *paradigms of non-merits adjudication*: they do not at all regard the merits of an action; instead, they merely classify that action, whatever its merits, as one on which the court concerned cannot speak." 701 F.2d 556, 562 (5th Cir. 2004) (emphasis added).

On the other hand, a determination that a statute of limitations has passed is a resolution of the merits of the claim, because advancement of the claim in any form or manner is effectively foreclosed if the statute has run. *Oaxaca*, 641 F.3d at 388 ("[T]ardy notification does not deprive the court of jurisdiction of the subject matter [citation omitted] but instead results in dismissal *because the claim lacks merit*.") (emphasis added).

Therefore, it must be determined whether Judge Carter's dismissal of the *Stolberg* Rehabilitation Act claim was for failure to properly exhaust administrative remedies, or for violating the timing procedures of Title VII. The timing overtones of Judge Carter's decision cannot be denied, since, after all, his decision hinged on whether Foster had satisfied the deadline for contacting an EEOC counselor. However, the more convincing argument is that the resolution was a matter of administrative exhaustion, since there was no question whether the timing deadline was violated, but only whether the USMS had been properly contacted for an extension. Judge Carter, for his part, made it clear that his decision was not preclusive of

another lawsuit.  He explicitly stated that he was not dismissing the case for failure to follow

timing requirements - simply that filing was premature until an extension was requested.

It seems more logical to interpret his decision as a determination that Foster had not

exhausted his administrative remedies, and was therefore not a decision on the merits.  As such,

there seems no basis to believe that Judge Carter's decision to dismiss the *Strolburg* Plaintiffs'

Rehabilitation Act claims should serve to bar Foster's claims in this case under the doctrine of

res judicata.

Of course, under the doctrine of collateral estoppel, the Court *is* bound to accept a

number of Judge Carter's determinations concerning Foster's Rehabilitation Act claim, as they

were necessary to his disposal of Foster's Rehabilitation Act claim in the *Strolburg* action.  The

Court must accept that Foster did not comply with the 45 day deadline for filing an EEOC

complaint under 29 C.F.R. § 1614.105, and therefore the Court cannot consider Foster's

contention in his complaint that he should be permitted to "piggyback" on the timely

administrative claims of the other *Strolburg* Plaintiffs. *See* **January 19, 2005 Order** at 14.  This

court is also bound to accept that judicially-imposed equitable tolling is not applicable to

Foster's claim.  **January 19, 2005 Order** at 14.   However, "the dismissal of a suit for want of

jurisdiction, prior to a decision on the merits, does not bar another suit under the doctrines of

preclusion *if the jurisdictional defect is remedied.*" *See Linthecome*, 2004 WL 51321 at *1

(citing *May v. Kennard Independant School Dist.*, No. 9:96-CV-2566, 1996 WL 768039, *3

(E.D. Tex. Nov. 22, 1996) (emphasis added)).  As Judge Carter recognized a slim glimmer of

hope for compliance with the administrative appeal process by permitting Foster and the other

plaintiffs to seek extensions from the USMS, this issue is not foreclosed through collateral

estoppel if it can be shown that Plaintiffs have requested and received an extension to file their

administrative appeal.

There has been no competent summary judgment evidence presented to the Court that a

request for an extension ever filed with the USMS, and no evidence that any such request was

ever actually denied.[1]  As such, his claim should be again dismissed for lack of subject matter

jurisdiction, because Foster has not satisfied the administrative process.  It should be noted that

this, again, would be a dismissal without prejudice for failure to exhaust administrative remedies,

and is not based on doctrines of claim or issue preclusion.  It is therefore DISMISSED

WITHOUT PREJUDICE.


### *Back Pay Act Claim*

Among a variety of other relief, the *Strolburg* Plaintiffs sought back pay under the Back

Pay Act.  28 U.S.C. § 1491 (2005).  They alleged that as they had been affected by unjustified

personnel actions resulting in withdrawal of pay, they were entitled to reimbursement for their

lost wages.  *Id.*  Judge Carter disposed of the Back Pay Act claims for all claimants in his

February 13, 2004 order.  He noted that as the United States Court of Federal Claims maintains

---

[1]Defendants contend that this request for an extension was denied.  From the evidence submitted by the parties, this does not appear to be the case.  On January 27, 2005, the EEOC denied Foster's complaint of discrimination and issued him a "right to sue letter."  In addition to dismissing on  the merits of Foster's claim, the EEOC also determined that his complaint was untimely.  Therefore, it is apparent that the EEOC has not granted Foster a filing extension.  However, an extension of the deadline for filing can be ordered by either the EEOC *or* by the USMS. *See* 29 C.F.R. 1614.105(a)(2), and there has been no evidence presented that the USMS denied an extension to Foster.  While it is an open question whether the USMS could extend the deadline to file after the EEOC has already ruled on the timeliness of an EEOC complaint, a resolution of this question is not necessary for the purpose of the Court's ruling.

exclusive jurisdiction for claims under the Back Pay Act in excess of $10,000, it was beyond the jurisdiction of the court to decide the claims for plaintiffs, most of whom were allegedly due more than a year's worth of back pay.  *See* **February 13, 2004 Order** at 2 (citing 28 U.S.C. § 1491(a)(1); *Professional Managers' Ass'n v. United States*, 761 F.2d 740, 743 (D.C. Cir. 1985)). As Judge Carter determined that many plaintiffs in the litigation had claims of greater than $10,000, he dismissed the Back Pay Act claims for lack of jurisdiction.  *Id.*

In his complaint before this Court, Foster again raises a claim under the Back Pay Act. He alleges that he is due back pay from May 2, 2005.  The Defendants claim that his claim is barred by collateral estoppel, because Judge Carter already determined that the district courts could not have jurisdiction over the *Strolburg* Plaintiffs' claims.   Foster now also seek to dismiss his Back Pay Act claim, but argues that it should not be barred from future action in the United States Court of Federal Claims.

This claim should also be dismissed, but Foster should be free to pursue his claim in the federal claims court.  This claim, like the Rehabilitation Act claim, was a dismissal in the *Strolburg* action that resulted from the decision of the trial court that it lacked jurisdiction.  This is not an adjudication of the merits of the claim, and thus the claim is not barred by res judicata. However, jurisdiction lies exclusively with the court of federal claims, and thus this court cannot exercise jurisdiction over the claim.  Foster's Back Pay Act claim should therefore be DISMISSED WITHOUT PREJUDICE.

*Due Process Claim*

It is clear that in addition to a Rehabilitation Act claim and a claim under the Back Pay

Act, the *Strolburg* Plaintiffs also raised a due process claim.  However, there is substantial

dispute as to the origins of that claim.   Foster contends here, as the *Strolburg* Plaintiffs

contended before Judge Carter, that the due process claim was initially raised in "scattered

paragraphs" of the First Amended Complaint.   *See* **January 19, 2005 Order** at.5.  We have not

been furnished with a copy of this complaint, so it is impossible to evaluate whether the due

process claim existed there.  However, it is clear that on July 28, 2004, the Plaintiffs sought

leave to file a Second Amended Complaint, and that complaint expressly contained a due process

claim. *Id*. at 5.

The *substance* of the due process claim asserted by the *Strolburg* Plaintiffs is also

difficult to grasp.  Portions of the *Strolburg* complaint pertaining to the due process claim are

included in the Plaintiff's summary judgment brief.  They asserted that because of the

contractual relationships between AKAL, USMS and the unions representing CSOs, the

Plaintiffs were guaranteed certain contractual protections.  They alleged that the *Strolburg*

Plaintiffs were employed pursuant to a labor contract between the USMS and AKAL.  That

contract provided that no employee could be dismissed "without just cause, unless the company

is directed by the U.S. Government to remove the Employee from working under the Employer's

contract with the U.S. Government, or if the Employee's credentials are denied or terminated by

the U.S.M.S."   The *Strolburg* Plaintiffs then appeared to connect this enhanced contractual

protection with an inherent right under due process to a hearing, so as to provide an avenue to

contest medical disqualification findings they believed to be erroneous.

Judge Carter addressed the due process claim solely in the context of the Plaintiffs'

motion to amend their pleadings.  In his January 19, 2005 order, Judge Carter denied leave to

amend.  *See* **January 19, 2005 Order** at 4.  He found that he was justified in refusing to permit

amendment because it violated his explicit instructions on the timing of amendments.  *Id.* at 4.

He also refused to permit amendment as it would be futile.  *Id.*

Regarding futility, he determined that the Rehabilitation Act was the exclusive judicial

remedy for claims of discrimination against federal employees, citing Ninth Circuit precedent to

the effect that even claims raising violation of constitutional rights can be preempted the

Rehabilitation Act.  *See id.* at 6-7 (citing *Scott v. Perry*, 569 F.2d 1064, 1065 (9th Cir. 1978).  He

did not find the Rehabilitation Act discrimination claim distinct enough from the due process

claim, which to him merely challenged the "mechanism" by which that discrimination occurred,

to stand as a separate, non-preempted claim.

Foster clearly raised a due process claim at the outset of this litigation, as his first cause

of action.  This cause of action is identical to the cryptic due process allegation brought by the

*Strolburg* plaintiffs.  The Defendants suggest that Judge Carter's refusal to permit the addition of

the due process claim was an adjudication on the merits of Foster's claim, and that it is now

barred by res judicata.  Foster responds that Judge Carter erred in determining that the due

process claim was not distinct from the Rehabilitation Act claim, citing case law from numerous

circuits involving similar due process claims that were determined to be separate from Title VII

or Administrative Procedures Act claims, and therefore not preempted by those acts' operation.

*See* **Pl.'s Mem. Br.** at 15 (citing *Ray v. Nimmo*, 704 F.2d 1480, 1487 (11th Cir. 1983); *Ethnic*

*Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985), *et seq*.)

There is no merit to Foster's response to the contention that his action is barred by claim

preclusion.  It may be possible that Judge Carter erred in determining that the *Strolburg*

Plaintiffs' due process claim was not distinct enough to survive preemption by the Rehabilitation

Act.  However, the proper avenue to raise that issue would have been on appeal in the *Strolburg*

case, which Foster declined to do.  The district court is not permitted to collaterally review the

decisions of another court, and the preclusion doctrines exist to prevent precisely this brand of

re-litigation.  *Test Masters Educ. Servs. v. Singh*, Nos. O3-20787, 04-20861 and 05-20049 2005

WL 2650945, at *5 (5th Cir. Oct. 18, 2005) ("If a party can only win the suit by convincing the

court that the prior judgment was in error, the second suit is barred.").

Foster also contends that the *Strolburg* court never ruled on the merits of his due process

claim, without explaining precisely why Judge Carter's resolution of the claim failed to qualify

as a decision on the merits.  While it might be argued that his decision to refuse amendment

could be interpreted to be based on two separate grounds: (1) that the claim was untimely and (2)

that the claim was preempted by the Rehabilitation Act, the claim is barred by claim preclusion

regardless of the reason.  Certainly, if refusal to amend was based on the fact that the claim was

preempted, then, regardless of whether that decision was correct, it was a final determination on

the merits of the claim, and is therefore barred.

But the end result is the same even if the claim were rejected solely because it was

untimely.  It must be remembered that claim preclusion works in two different ways.  First, it

bars claims that were actually raised in the previous litigation and resolved by a final judgment

on the merits of the claim.  *See Nilsen v. City of Moss Point Mississippi*, 701 F.2d 556, 559 (5th

Cir. 1983).  It also operates to bar claims that should have been brought in the first litigation,

even if they were not ever considered by the previous court.  *Id.* at 560; *see also Allen v.

McCurry*, 449 U.S. 90, 94 (1980).  Thus, it wouldn't matter if his due process claim were ever

raised in the first action, if it *should have* been brought there.  *See Nilsen,* 701 F.2d at 563.

The Fifth Circuit employs the "transactional" test from the Second Restatement to determine whether two claims should have been brought together.  *See Nilsen*, 701 F.2d at 560 n.4; *see also Howe v. Vaughan*, 913 F.2d 1138, 1144 (5th Cir. 1990).  Under the *Nilsen* transactional test, two claims arise from the same transaction, and therefore should have been brought together, if the actions arose from the same "nucleus of operative facts."  *Howe*, 913 F. 2d at 1144.  It is immaterial under the transactional test what relief is requested or what theory is asserted.  *Id.* at 1144.

It certainly appears, contrary to Foster's own contention, that Foster's due process claims come from the same nucleus of operative facts as the other claims brought in the *Strolburg* action.  The due process claim clearly challenges the actions by the USMS, AKAL and Dr. Barson that led to his decertification and termination.   These are the exact same actions on the part of the same actors that formed the core of the *Strolburg* Plaintiffs' other claims.

And no avail would come from the argument that Foster could not have raised his claim in the first action because leave to amend was denied.  The Fifth Circuit in *Nilson* makes plain that, as a general matter, a plaintiff would be excused from claim preclusion if it would not have been possible to raise the claim in the first action.  *See Nilson*, 701 F.2d at 562-63.  However, the court in *Nilson* also makes clear that a claim that was denied asunder a motion to amend is still precluded from being raised again when the reason for the denial was the plaintiff's own "unexplained dilatoriness" in filing.  *See id.*; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt b (1982) ("It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in

the complaint and an application to amend the complaint came too late.").

Regardless of whether Judge Carter dismissed Foster's claim because it was untimely, or because it was futile, it is now barred by claim preclusion and cannot be heard by this Court.  It should therefore be DISMISSED WITH PREJUDICE.

## CONCLUSION

It is the conclusion of the Court that the Defendant's *Motion for Summary Judgment* should be GRANTED in part.  Therefore,

Foster's claims under the ADA and ADEA should be DISMISSED WITH PREJUDICE.

Foster's contract and FTCA claims should be DISMISSED WITH PREJUDICE.

Foster's Rehabilitation Act claim should be DISMISSED WITHOUT PREJUDICE.

Foster's Back Pay Act claim should be DISMISSED WITHOUT PREJUDICE.

Foster's due process claim should be DISMISSED WITH PREJUDICE.

It is SO ORDERED.

Signed this __4th__ day of November, 2005.

/s/ Mary Lou Robinson
**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**